```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF GEORGIA
                   COLUMBUS DIVISION
```

JOHN HILL, SR., CYNTHIA JOHNSON, \*
and BEVERLY MARSHALL,
individually and on behalf of    \*
all other similarly situated
individuals                      \*

      Plaintiffs,              \*

vs.                              \*
                                      CASE NO. 4:03-CV-60(CDL)
MUSCOGEE COUNTY SCHOOL DISTRICT, \*

      Defendant                \*

## O R D E R

Defendant's motion to decertify Plaintiffs' conditionally certified collective action (Doc. 41) is presently pending before the Court. Plaintiffs, who are current or former employees of Defendant, filed this putative collective action pursuant to section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), alleging that Defendant did not pay them overtime for hours they worked in excess of forty hours per week. The Court previously conditionally certified a class of paraprofessional/teacher's aide Plaintiffs.[1] The conditionally certified class is comprised of Plaintiff Johnson and thirteen opt-in Plaintiffs, all current or former paraprofessionals.[2] The parties have had an opportunity to conduct discovery from Plaintiff Johnson and the opt-in Plaintiffs, and Defendant now

---

[1] Plaintiffs Hill and Marshall, who were both custodians, were not included in this conditional class. Both Hill and Marshall have since dismissed their claims against Defendant.

[2] The opt-in Plaintiffs are Farish Anderson, Sr., Sharolyn Bennefield, Fernando Bowens, Carether Calloway, Terri Carver, Jo Alice Cook, Marcella Hardmon, Maria Holloway, Bianka Houser, Brenda James, Alice G. Knight, Dameatrius Moore (the parties refer to him as Morse), and Sandra Williams.

contends that the members of the conditionally certified class have not demonstrated that they meet the "similarly situated" requirement of the FLSA. For the reasons discussed below, the Court disagrees, and Defendant's motion to decertify the conditionally certified class is therefore denied.

## BACKGROUND

Plaintiffs in this case are current or former paraprofessionals employed by the Muscogee County School District ("MCSD" or "Defendant").[3] They seek to recover payment of unpaid overtime wages, along with liquidated damages, to compensate them for Defendant's alleged violation of the FLSA. According to Defendant, Plaintiffs worked at ten different schools within MCSD, each headed by a principal with the autonomy to make his or her own policy regarding accrual and payment of overtime. The record before the Court reveals that at least three different principals had nearly identical overtime policies for their paraprofessionals.[4] The record also establishes that though Plaintiffs worked with children of different ages and ability levels, they all supervised and worked with children

---

[3] The Appendix to this Order contains a chart which provides basic information regarding each class member.

[4] Defendant submitted affidavits of three principals which outlined their overtime policies for paraprofessionals:
  1. "My policy was and is that paraprofessionals are to work their scheduled hours only." (V. Biggers Aff. 10) (Marshall M.S.).
  2. "I instructed paraprofessionals . . . that they were not to work overtime." (Cassell Aff. 11) (Edgewood Elem.).
  3. "My policy . . . was that paraprofessionals were not to work before 8:30 or after 3:45 without prior express permission or approval." (Hipps Aff. 9) (Double Churches Elem.). Hipps did not explain which, if any, overtime requests might be approved, though she did state that neither paraprofessional who worked for her requested such approval after the policy was implemented.

in a classroom (or classroom-like) setting. And though their supervisors gave them each varying extra duties that required them to work beyond their scheduled hours, such as bus duty or meeting attendance, the extra duties assigned by their supervisors appear to relate to their regular job duties, including student supervision, class preparation, and professional enrichment. *See* Appendix.

Plaintiffs contend that they all worked extra hours in addition to their scheduled hours but were not compensated for that time. They allege in their Complaint that Defendant engaged in a pattern and practice of failing to pay Plaintiffs proper overtime wages, of withholding relevant information which would advise them of their entitlement to overtime pay, and of leading them to believe they were not entitled to overtime pay. The specific alleged improper practice: Plaintiffs' supervisors assigned them work that could not be completed within Plaintiffs' scheduled work hours, but Plaintiffs were compensated only for their scheduled hours despite working overtime to complete their assignments. *See* Appendix. As a result of this alleged improper practice, Plaintiffs were not compensated for hours they worked in addition to their regular scheduled hours.

## DISCUSSION

Under the FLSA, all covered employees must be paid one and a half times their regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). An employer violating this provision can be held liable for the unpaid overtime compensation plus an equal amount as liquidated damages. *Id.* § 216(b). Under the opt-in mechanism provided in § 216(b), employees may maintain a collective action against an employer to recover

unpaid overtime if they are "similarly situated." *Id.* The Eleventh Circuit endorsed a two-tiered § 216(b) class certification approach in *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The first step of this approach is to conditionally certify a collective action, authorizing notice to potential opt-in plaintiffs. After the opt-in period has ended and discovery has been conducted, a conditionally certified class may be decertified if the evidence shows that the members of the conditionally certified class are not similarly situated. *Hipp*, 252 F.3d at 1218.

In this case, the Court has followed the *Hipp* approach. The Court previously conditionally certified a collective action class of paraprofessional/teacher's aide Plaintiffs. Defendant now moves to decertify that class, contending that Plaintiffs are not "similarly situated." In determining whether the employees are similarly situated, the courts commonly consider the employees' employment settings and job duties, along with individual defenses the defendant may assert against each plaintiff and fairness and procedural considerations. *See, e.g.*, *Stone v. First Union Corp.*, 203 F.R.D. 532, 543 (S.D. Fla. 2001). Defendant in this case focuses its argument predominately on Plaintiffs' employment settings and job duties, contending that Plaintiffs failed to sufficiently allege a pattern or practice of FLSA violations and that Plaintiffs are not similarly situated because their claims involve different job duties, different hours worked, different allegations about the manner in which they were denied pay, and different supervisors. Defendant further contends that there are individual defenses which it may assert against each Plaintiff and that fairness and procedural

4

considerations do not weigh in favor of maintaining a collective action in this case.

*1. Employment Setting and Job Duties*

Plaintiffs seeking to maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). This burden is not heavy. See *Grayson*, 79 F.3d at 1096 (emphasizing that the "similarly situated" requirement of § 216(b) is less stringent than the "same transaction or occurrence" requirement for joinder under Fed. R. Civ. P. 20(a)). On a motion to decertify, Plaintiffs must demonstrate a "reasonable basis" for their claim of a class-wide violation. *Hipp*, 252 F.3d at 1219. To meet this burden, Plaintiffs must make "substantial allegations of class-wide" violations, which means detailed allegations supported by evidence which "successfully engage[s]" Defendant's evidence to the contrary. *Id.* To show that they are similarly situated, Plaintiffs may present allegations and evidence to show that Defendant engaged in a unified policy, plan, or scheme of FLSA violations. *Grayson*, 79 F.3d at 1096. Such a showing is not required, however, if Plaintiffs can otherwise show that their positions are "similar, not identical, to the positions" held by the other class members. *Hipp*, 252 F.3d at 1217, 1219; *see also, e.g., Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003) (listing factors relevant to similarly situated inquiry in FLSA context, derived from factors employed in Age Discrimination in Employment Act context in *Stone*, 203 F.R.D. at 542-43).

At the core of the "similarly situated" inquiry is the question whether the issues in the case can be adjudicated collectively. Without more, the fact that *some* FLSA violations occurred is not enough to establish similarity justifying collective adjudication because unrelated sporadic violations would not present a court with issues sufficiently connected to be resolved together. *See Marsh v. Butler County Sch. Sys.*, 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003) (refusing to certify class of all hourly employees of school system where plaintiffs did not point to or provide evidence of any particular improper practice leading to overtime violations). However, if there is sufficient evidence of an employer's pattern of subjecting employees to the same improper practice, that *would* be sufficient to warrant a finding of similarity justifying collective adjudication. *Grayson*, 79 F.3d at 1095; *see Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 364 (M.D. Ala. 1999) (conditionally certifying class of all hourly employees in a single restaurant where there was evidence that management had practice of clocking out employees without authorization while employees were still working).

In this case, Defendant contends that Plaintiffs have failed to allege or provide a reasonable basis for their claim that Defendant employed a policy or practice of denying overtime pay to paraprofessionals. Plaintiffs clearly allege that Defendant engaged in a pattern and practice of failing to pay Plaintiffs proper overtime wages, of withholding relevant information which would advise them of their entitlement to overtime pay, and of leading them to believe they were not entitled to overtime pay. Furthermore, they have provided substantial allegations of a specific improper practice:  Plaintiffs allege, and the evidence produced suggests

6

(when viewed in the light most favorable to Plaintiffs), that Plaintiffs' supervisors assigned them work consistent with their regular job duties that could not be completed within Plaintiffs' scheduled work hours and that Plaintiffs were compensated only for their scheduled hours even though they worked overtime to complete their assignments. At least nine Plaintiffs assert that they were specifically instructed by MCSD employees not to document more hours than their scheduled work hours on their time sheets. The critical issue for the "similarly situated" inquiry in this case is whether this alleged practice was the result of a formal or informal district-wide policy or the autonomous decision-making of each individual principal. Defendant insists that each principal within MCSD had the autonomy to make decisions regarding accrual and payment of overtime for his or her own school and that any similarities between practices at different schools is merely coincidental. Defendant correctly notes that the denial of overtime compensation by one decision maker does not necessarily suggest similar denials by other decision makers. *See Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1235-36 (M.D. Ala. 2003). However, if the decision makers all employ the same practice to deny overtime compensation, one justifiable inference which arises is that the pattern of violations was not coincidental but resulted from the application of a central policy.[5] *Cf. Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d

---

[5] Defendant conceded at oral argument on this motion that if the paraprofessionals in MCSD all alleged one specific *type of assignment* for which they were not paid, such as attendance at PTA meetings, that would be enough to conclude that the practice was the result of a central policy and not simply the result of a coincidence. For Defendant, the crucial difference between that hypothetical and this case is that Plaintiffs in this case have alleged several types of extra duties which resulted in

1342, 1347 (N.D. Ga. 2002) (rejecting defendant's argument that job duties of department managers were determined at the store level and not centrally because the evidence did not show many practical differences in their job duties among the stores).

Although they have not produced any "smoking gun" evidence of a general MCSD policy of denying overtime pay to paraprofessionals, Plaintiffs have presented substantial allegations that they were subjected to the same practice of being assigned work consistent with their regular job duties that could not be completed within their scheduled hours but being paid only for their scheduled hours. That Plaintiffs were all subjected to the exact same improper practice certainly raises an inference that the overtime decisions at the different schools were not merely coincidental products of autonomous decision-making by the individual principals. Defendant's evidence that at least some Plaintiffs were specifically told not to work overtime does not counsel a different conclusion: based on the evidence before the Court, a fact-finder could conclude that such statements amount to form over substance—telling the paraprofessional "stop working when you come to the end of your scheduled hours" but assigning (or expecting intermediate supervisors to assign), with a wink and a nod, more work than a paraprofessional could reasonably complete in forty hours and trusting the conscientious

---

overtime, ranging from bus duty to after-school meetings.  Defendant's focus on the specific tasks resulting in overtime is too narrow; the extra job duties performed by Plaintiffs in this case appear to be consistent with the normal job duties of a paraprofessional, so the fact that different supervisors assigned various extra tasks from the same menu of paraprofessional duties should not defeat a "similarly situated" finding. *Cf. Hipp*, 252 F.3d at 1219 (requiring that plaintiffs allege "similar, though not identical" treatment to support similarly situated finding).

paraprofessional to get it done, even if that means coming in early or working late. Moreover, Defendant's reliance upon the overtime policies of three different principals does not support its argument that these policies were the result of autonomous decision-making: the three policies are nearly identical. For these reasons, the Court finds that Plaintiffs have met their burden of showing that they are similarly situated with regard to employment setting and job duties by presenting substantial allegations of a pattern of potential FLSA violations.[6]

*2. Other Considerations*

Defendant argues that even if Plaintiffs are similarly situated with regard to employment setting and job duties, collective adjudication is not appropriate because there are individual defenses which Defendant may assert against each Plaintiff. Generally, these defenses appear to relate chiefly to the issue of damages—how much

---

[6]Even if there were no substantial allegations of a pattern of denying overtime, Plaintiffs would still be "similarly situated" with regard to employment setting and job duties under the relevant factors employed by the Eleventh Circuit in *Hipp* and *Grayson*. *Hipp*, 252 F.3d at 1219; *Grayson*, 79 F.3d at 1097-99; *accord Stone*, 203 F.R.D. at 542-43 (listing factors enunciated in *Hipp* and *Grayson*). In the instant case, all four factors relevant to the FLSA context weigh in favor of Plaintiffs: (1) Plaintiffs all had the same job title and similar job duties, (2) Plaintiffs presented substantial allegations to support a finding that different schools were not autonomous with regard to their overtime policies, (3) Plaintiffs presented substantial allegations to support a finding that the principals formulated overtime policies and operated in lockstep with regard to their overtime policies and (4) Plaintiffs all alleged similar, though not identical, treatment which could give rise to FLSA violations. *See Hipp*, 252 F.3d at 1219; *Grayson*, 79 F.3d at 1097-99*; see also Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232-33 (S.D. Ala. 2003) (applying factors to deny class certification in FLSA case where plaintiffs held a wide assortment of jobs, made no showing that each geographical location was not autonomous, made no showing to show that different decision makers within single geographical location operated in lockstep, and failed to identify any particular manner of overtime violation used by employer).

uncompensated overtime is actually due to each Plaintiff.  This issue should not preclude collective adjudication of the central issue—whether there was an improper practice that was formulated centrally and resulted in uncompensated overtime.

Defendant further contends that decertifying the class is warranted because each Plaintiff can pursue his or her claims individually—so decertification is not unfair.  However, the effect of decertification would be to dismiss the opt-in plaintiffs without prejudice,[7] placing each opt-in Plaintiff back in square one without the benefit of pooled resources and presenting the Court with fourteen separate lawsuits to resolve substantially the same question of whether Defendant had a central practice which denied overtime compensation to paraprofessionals.  Such a result is inimical to the policy behind collective actions under § 216(b) of the FLSA: allowing plaintiffs to vindicate their rights with lower individual cost by pooling of resources and benefitting the judicial system by "efficient resolution in one proceeding of common issues of law and fact" arising from the same improper practice.  *See Hoffmann-La Roche, Inc.*, 493 U.S. 165, 170 (1989).

Accordingly, the Court denies Defendant's motion to decertify Plaintiffs' conditionally certified collective action (Doc. 41).

---

[7]The FLSA allows collective actions by employees who are similarly situated—if a court finds at the motion to decertify stage that the members of the class are *not* similarly situated, then the court "decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

IT IS SO ORDERED, this 20th day of December, 2005.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

Case 4:03-cv-00060-CDL   Document 64   Filed 12/21/05   Page 11 of 13

APPENDIX

| Employee | Job Title/Dates | School/Duties | Supervisor | Alleged Improper Practice(s) |
|---|---|---|---|---|
| F. Anderson | Paraprofessional Claim re October 2001-May 2003 | Blackmon Rd. M.S. Special education Extra duty: directed traffic | Vanessa Biggers Johnny Freeman (asst principals) | Told by Ms. Russell, an office asst, not to report accurate arr/dep times on time sheet, even if he worked more hours. |
| S. Bennefield | Paraprofessional Claim re 2001-02 school year | Not provided Special education Extra duty: early bus duty | Not provided | Told by Ms. Daisy Bell, a secretary, to record only scheduled hours on her time sheet even if she worked more hours. |
| F. Bowens | Paraprofessional Claim re 2001-02 and 2002-03 s.y. | School not provided In-school suspension technician Extra duty: early bus duty | Not provided | Told to record only scheduled hours on timesheet because school would only pay for those hours. |
| C. Calloway | Paraprofessional Claim re 2000-01, 2001-02, 2002-03 school years | School not provided Extra duty: meetings, taking home work | Not provided | Required to work outside scheduled hours but was not compensated at any rate of pay for extra work. |
| T. Carver | Paraprofessional Claim re 2001-02 and 2002-03 s.y. | Double Churches Elem. Extra duty: meetings, bus duty, taking work home, finalizing work after hours | Elizabeth Hipps | Instructed to record only scheduled hours on timesheet even though she worked more time. |
| J. Cook | Paraprofessional Claim re 2001-02, 2002-03, 2003-04 school years | Edgewood, Arnold El. Worked with visually impaired students Extra duty: meetings, day care duty, taking work home, gathering supplies | Melana Cassell (Edgewood principal starting in 2003) | Told by paraprofessional liaison not to include time outside of scheduled hours on time sheet, even if it was worked. Note: during 2003-04 year, Cassell told paraprofessionals not to work ot w/o permission. |
| M. Hardmon | Paraprofessional Claim re 2001-02 and 2002-03 s.y. | School not provided Class/computer lab Extra duty: meetings, finishing work that could not get done | Dr. Griswood (principal) | Told by principal only to record scheduled hours on timesheet even if she worked more time. |
| M. Holloway | Paraprofessional Claim re 2001-02 school year | Double Churches Elem. Extra duty: bus duty, meetings, taking work home, summer work | Elizabeth Hipps (principal) | Arrived early, stayed late, took work home in the evenings/on weekends and did not document any of these hours on timesheet. |

| Employee | Job Title/Dates | School/Duties | Supervisor | Alleged Improper Practice(s) |
|---|---|---|---|---|
| B. Houser | Paraprofessional Claim re 2000-01, 2001-02 school years | Cusseta Rd. Elem. Special education Extra duty: bus duty, hall/breakfast duty, completing unfinished tasks, meetings | Melana Cassell (asst principal until 2003) Donald Caldwell Carmel Biggers (principals) | Worked time she did not include on her timesheets based on recommendation of Cusseta Rd. Elem. Sch. secretary, Ms. Callier. When she tried to record actual hours, her timesheet was returned. |
| B. James | Paraprofessional Claim re 2001-02, 2002-03 s.y. | School not provided Extra duty: bus duty, meetings | Not provided | Required to work outside scheduled hours but was not compensated at any rate of pay for extra work. |
| C. Johnson | Paraprofessional Claim re 2001-02 school year | Wesley Hts. Elem. Extra duty: staying at school until all children picked up, meetings | Not provided | Was told to stay at school until all children had been picked up; was told to attend PTA meetings, Open House, faculty meetings outside of regularly scheduled work hours. Not compensated for extra work. |
| A. Knight | Paraprofessional Claim re 2000-01 school year | School not provided Extra duty: bus duty, meetings, taking work home, field trips, extra classes | Not provided | Required to work outside scheduled hours but was not compensated at any rate of pay for extra work. |
| D. Morse | Paraprofessional Claim re 2001-02, 2002-03 s.y. | Marshall M.S. Extra duty: bus duty, coaching, supervising disciplined students on weekends, dance chaperone | Vanessa Biggers (principal) | Required to work outside scheduled hours but was not compensated at any rate of pay for extra work. |
| S. Williams | Paraprofessional Claim re 1999-2000 school year | Marshall M.S. In-school suspension technician Extra duty: bus duty, meetings, chaperone events | Edward Smith (principal) | Was told by bookkeeper to put only scheduled hours on time sheet; arrived before/left after time on timesheet. Was told by principal that day started at 7:00 and ended when the last bus left. |